UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM T. DIVANE, JR.,
KENNETH J. BAUWENS,
MICHAEL J. CADDIGAN,
LARRY CRAWLEY,
SAMUEL EVANS,
TIM FOLEY,
THOMAS C. HALPERIN,
JAMES NORTH,
KEVIN O'SHEA,
and MICHAEL L. WALSDORF,
as the ELECTRICAL INSURANCE
TRUSTEES,

       Plaintiffs,

   v.

NEW HORIZONS COMMUNICATIONS,
INC.,

       Defendant.

FILED: APRIL 22, 2008
No. 08CV2282          TG
JUDGE COAR
MAGISTRATE JUDGE SCHENKIER

**COMPLAINT**

    The plaintiffs, WILLIAM T. DIVANE, JR., KENNETH J. BAUWENS,

MICHAEL J. CADDIGAN, LARRY CRAWLEY, SAMUEL EVANS, TIM FOLEY,

THOMAS C. HALPERIN, JAMES NORTH, KEVIN O'SHEA, and

MICHAEL R. WALSDORF, as the ELECTRICAL INSURANCE TRUSTEES (the

"Trustees"), by their attorney, David R. Shannon, for their

complaint against the defendant, NEW HORIZONS COMMUNICATIONS,

INC. ("New Horizons"), state:

    1.    This action arises under the Labor-Management Relations

Act, as amended (29 U.S.C. § 141 et seq.), and the Employee

Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et

seq.).  Jurisdiction is founded on the existence of questions

arising thereunder.

2.    Venue is proper in the Northern District of Illinois pursuant to 29 U.S.C. § 1132(e)(2) by virtue of the fact that the Trustees' administrative offices are located in Chicago, Illinois.

3.    The plaintiffs are the duly appointed and acting trustees under an agreement originally entered into on June 24, 1930, between the Electrical Contractors' Association of City of Chicago ("ECA") and Local 134, International Brotherhood of Electrical Workers, and are known as the Electrical Insurance Trustees.

4.    New Horizons is an electrical contractor which signed a Letter of Assent effective January 29, 1999, and thereby agreed to the terms of a collective-bargaining agreement entered into between the ECA and Local 134 called the "Communication Agreement."  A copy of the Letter of Assent is attached hereto as Exhibit A.

5.    Under the Communication Agreement, New Horizons agreed to pay certain wage rates and, in addition, to file a monthly report with and make a monthly contribution to the Trustees to cover certain fringe benefits.  Excerpts of the Communication Agreement, including Article XVI (Benefits), Article XVII (Wage and Benefit Performance Bond), and Article XVIII (Wage and Fringe Benefit Checks - Delinquency Collection Policy) are attached hereto as Exhibit B.  The Delinquency Collection Policy describes the payroll audit procedure and the Trustees' remedies for

delinquent contributions, and it provides for liquidated damages,

interest, and attorneys' fees.

6.    Section (g)(1) of Article First of the insurance trust

agreement ("Insurance Agreement") pursuant to which the

plaintiffs are appointed trustees and which describes the duties

and responsibilities of the Trustees provides as follows:

> The Trustees shall have plenary power to make, from
> time to time, and to enforce such rules and regulations
> for the determination of eligibility for benefits, for
> the proper collection and handling of said Fund, for
> the allocation of benefits to those eligible for it,
> for the determination of who may be beneficiaries and
> the terms and conditions under which benefits shall be
> given to the beneficiaries and forfeited by them, and
> for the determination of methods of procedure and every
> other question (irrespective of its nature) arising in
> the collection and administration of said Fund, and
> generally in the carrying out of this Agreement, and in
> fully and completely accomplishing its purpose.

7.    Section (g)(2) of Article First Insurance Agreement

provides as follows:

> "Each employer shall make continuing, prompt and proper
> payments to the Trust Fund in such amounts as shall have
> been agreed upon in writing from time to time, together with
> such amounts as may be provided for as liquidated damages
> with respect to delinquent accounts."

8.    Section (g)(3) of Article First of the Insurance

Agreement provides in part as follows:

> "The Trustees, in their fiduciary capacities, shall
> have the power to demand and collect the contributions
> of the Employers to the Fund* * *. In addition to any
> other remedies to which the parties may be entitled, an
> Employer shall be obligated to pay interest at the rate
> of 6% per annum on the moneys due to the Trustees from
> the date when the payment was due to the date when
> payment is made, together with all expenses of
> collection incurred by the Trustees."

9.    Section (g)(5) Article First of the Insurance Agreement

provides in part as follows:

> "Each Employer shall promptly furnish to the Trustees,
> on demand, the names of its employees, their Social
> Security numbers, the hours worked by each employee and
> such other information as the Trustees may reasonably
> require in connection with the administration of the
> Trust.  The Trustees may, by their representatives,
> examine the pertinent records of each Employer at the
> Employer's place of business whenever such examination
> is deemed necessary or advisable by the Trustees in
> connection with the proper administration of the
> Trust."

10.    Section (o) of Article First of the Insurance Agreement

provides:

> "To the fullest extent permitted by federal law, the
> Trustees shall have the discretionary authority to determine
> all questions arising in connection with the Trust Fund ...
> or as to the construction of the language or meaning of ...
> this instrument or as to any writing in connection with the
> operation of the Trust Fund or otherwise and the decision of
> a majority of the Board of Trustees, if made in good faith,
> shall be binding upon all persons dealing with the Trust
> Fund or claiming any benefits thereunder...."

11.    In 2008, pursuant to the Trustees' authority set forth

in Section (g)(5) Article First of the Insurance Agreement,

Section 18.01(k) of the Communication Agreement, the Trustees

attempted to conduct an audit of New Horizons' books and records

covering the period from January 1, 2005 through the present.

However, New Horizons refuses to schedule an audit and produce

its books and records.

12.    On August 15, 2007, Benefit Security Insurance Company

("BSIC") through its agent, C.W. Olson & Co., New Horizons'

surety, informed the Trustees that New Horizons' fringe-benefit

bond, which the surety issued to cover New Horizons' obligations

under the Communication Agreement, would be canceled effective September 17, 2007.  A copy of the letter is attached hereto as Exhibit C.

13.  New Horizons has failed to provide a fringe-benefit bond to replace the bond canceled by BSIC.

14.  New Horizons may be performing work within the scope of work clause of the Communication Agreement, and within the jurisdiction of Local 134 despite the breach of its obligation to provide valid fringe benefit bonds to the Trustees.

15.  The Trustees' pension obligations to plan participants and beneficiaries are based on the terms of the plans and are independent of employers' obligations to fund the plans. However, the actuarial calculations which determine the amount of the fringe benefit contributions are based on an assumption that participating employers will report all covered work and pay contributions for all hours of bargaining unit work.  If some employers do not contribute, the Trustees will be required to provide some benefits without having received corresponding contributions.  If that occurs, the shortfall must be made up by decreasing the amount of benefits for all participants or increasing the contributions rate for other employers.

16.  The Trustees will suffer irreparable harm by incurring unfunded liabilities which would jeopardize the actuarial soundness of the funds which the Trustees administer if New Horizons fails to submit contributions.  The Trustees must provide pension credits for all hours worked by New Horizons'

electricians regardless of whether New Horizons honors its
obligation to pay contributions to the Trustees.  The plan
participants are employees of New Horizons and their dependents
could suffer irreparable harm from a suspension of health and
welfare benefits while contributions remain unpaid without back-
up security.

17.    The Trustees have a fiduciary duty under ERISA to use
all reasonable means to ensure the collection of fringe benefit
contributions due under the Communication Agreement in order to
maintain the financial health of the plans they administer.

18.    New Horizons should be enjoined from performing
bargaining unit work in the jurisdiction of Local 134 in order to
minimize the amount of unfunded liabilities which the Trustees
will incur.

19.    The Trustees' legal remedy -- a money judgment -- is
inadequate because New Horizons may be insolvent.  The Trustees
may be unable to collect a money judgment, they are entitled to
the security of a bond if New Horizons is the subject of
insolvency proceedings, and they should not have to assume the
risk that New Horizons will default on its obligations and leave
the Trustees without an effective remedy.

20.    It is more than likely that the Trustees will prevail
on the merits.  The furnishing of a fringe benefit bond is an
absolute requirement under the Communication Agreement.

21.    Ordering New Horizons to furnish a fringe-benefit bond
would not impose a hardship on New Horizons but would only

-6-

require New Horizons to honor its contractual obligation to provide security to the Trustees and their plan participants and beneficiaries.

WHEREFORE, the plaintiffs, WILLIAM T. DIVANE, JR., KENNETH J. BAUWENS, MICHAEL J. CADDIGAN, LARRY CRAWLEY, SAMUEL EVANS, TIM FOLEY, THOMAS C. HALPERIN, JAMES NORTH, KEVIN O'SHEA, and MICHAEL R. WALSDORF, as the ELECTRICAL INSURANCE TRUSTEES, request the entry of an order directing NEW HORIZONS COMMUNICATIONS, INC. to submit to a payroll audit covering the period from January 1, 2005 through the present and enter a judgment in favor of the Trustees and against NEW HORIZONS COMMUNICATIONS, INC. for the amount shown due under the audit, together with liquidated damages, interest and costs of collection, including attorneys' fees.  The Trustees also request entry of an order enjoining NEW HORIZONS COMMUNICATIONS, INC. from continuing to engage in work within the scope of work clause in the Communication Agreement and within the jurisdiction of Local 134, I.B.E.W., for so long as it is a signatory of that agreement, unless and until it furnishes the Trustees with a duly-executed standard fringe-benefit bond.  The Trustees also request the Court to grant such other legal or equitable relief as the Court deems appropriate.

WILLIAM T. DIVANE JR., <u>et al</u>., as the
ELECTRICAL INSURANCE TRUSTEES

By:  /s/ David R. Shannon
     _____
     One of Their Attorneys

David R. Shannon
Tenney & Bentley, LLC
111 West Washington Street
Suite 1900
Chicago, Illinois 60602
(312) 407-7800

## LETTER OF ASSENT – A

In signing this letter of assent, the undersigned firm does hereby authorize [1] ~~Electrical Contractors' Association~~

**of City of Chicago, Inc., NECA** _____ as its collective bargaining representative for all matters contained in or pertaining to the

current and any subsequent approved [2] _____ **Communications** _____ labor agreement between the

**Electrical Contrs. Assoc., NECA, City of Chicago** _____ and Local Union [3] **134**, IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the [4] **29** day of

**January** **1999** . It shall remain in effect until terminated by the undersigned employer giving written notice to the

**Electrical Contrs. Assoc., NECA, City of Chicago** _____ and to the Local Union at least one hundred

fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

**New Horizons Communications, Inc.**
[5] Name of Firm

**929 West Liberty**
Street Address/P.O. Box Number

**Wheaton, IL 60187**
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No.: **36- 4235407**

SIGNED FOR THE EMPLOYER

BY [7] _____ (original signature)

NAME [8] **Mary Ann Langman**

TITLE/DATE **President**

RECEIVED
FEB 3 1999
ELECTRICAL INSURANCE
TRUSTEES

SIGNED FOR THE UNION [3] **134** IBEW

BY [7] _____ (original signature)

NAME [8] **Michael Fitzgerald**

TITLE/DATE **Business Manager**

---

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.

[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[3] LOCAL UNION
Insert Local Union Number.

[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] SIGNATURES
[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.
IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

IBEW FORM 302 REV. 6/94

08CV2282                      TG
JUDGE COAR
MAGISTRATE JUDGE SCHENKIER



## Communication Agreement

The Employee shall immediately be placed at the bottom of the Referral Book for which the Employee qualifies and shall not be allowed to work for the subject Employer for a period of two (2) years.

### ARTICLE XV
### Apprenticeship and Training

**Section 15.01** There shall be an Electrical Joint Apprenticeship and Training consisting of five (5) members representing the Association and five (5) members representing the Union. This Committee shall adopt local Communication Training Standards in conformity with the National Communication Training standards for the Electrical Contracting Industry. It shall also be responsible for training Communication Journeymen and others. These local standards will be promptly agreed upon by the parties to this Agreement and shall be registered by the Local Joint Apprenticeship and Training Committee with the National Joint Apprenticeship and Training Committee.

**Section 15.02** Members of the Electrical Joint Apprenticeship and Training Committee shall be selected by the party they represent. Their term of office shall be three (3) years unless removed by the party they represent. The term of one (1) Association and one (1) Union representative shall expire each year with successors to be determined in the same manner as the original appointments were made. A Committee member may succeed himself.

**Section 15.03** The Subcommittee shall select from its membership, but not both from the same group, a Chairman and a Secretary who shall retain voting privileges.

**Section 15.04** The Subcommittee shall meet at least once a month and also when called by the Chairman.

**Section 15.05** The Subcommittee shall supervise all matters involving Communication training in conformity with the provisions of this Agreement and the registered local Communication Training Standards. In case of a deadlock, the matter in dispute shall be referred to the Local Joint Apprenticeship and Training Committee for settlement. Any proposed changes in this Agreement pertaining to Communication Training should first be considered by the Communication Subcommittee for their recommendation before being acted upon by the parties to this Agreement.

**Section 15.06** An Apprentice who has completed his probationary period may be removed from training by the Subcommittee, in accordance with its rules, for cause. Such removal by the Subcommittee also cancels his classification of Apprentice and the opportunity to complete this training.

**Section 15.07** The parties to this Agreement shall be bound by the Electrical Joint Apprenticeship and Training Trust Fund Agreement which conforms to Section 302 of the Labor-Management Relations Act of 1947, as amended. The Trustees authorized under this Trust Agreement are hereby authorized to determine the reasonable value of any facilities, materials or services furnished by either party. All funds shall be disbursed in accordance with this Trust Agreement.

## Communication Agreement

**Section 15.08** In order to fund the work of the Electrical Joint Apprenticeship and Training Committee, the Trust and the JATP, the Company shall contribute into the Electrical Joint Apprenticeship and Training Trust Fund an amount agreed to pursuant to Appendix "E" for each hour worked.

### ARTICLE XVI
### Benefits

**Section 16.01** The following days shall be recognized as legal holidays: New Year's Day, Decoration Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day or days celebrated as such.

**Section 16.02** It is distinctly understood that no construction work shall be done on the first Monday of September, commonly known as Labor Day, except in emergency to preserve life and property and to maintain service to the public.

**Section 16.03** The Company would like thirty (30) days advanced notice from employees wishing to take vacation time, but such vacation time should be scheduled at least two (2) weeks in advance.

**Section 16.04** Health and Welfare contributions shall be made pursuant to the provisions of Appendix "C". Annuity contributions shall be made pursuant to the provisions of Appendix "D". Retirement Health Reimbursement Account contributions shall be made pursuant to the provisions of Appendix "F". The Labor Management Cooperation Committee of Chicago (LMCC/Chicago) contribution shall be made pursuant to the provisions of Appendix "G". Administrative Maintenance Fund contributions shall be made pursuant to the provisions of Appendix "I".

**Section 16.05** The Electrical Joint Arbitration Board recognizes that the dangers and costs which alcohol and other chemical abuses can create in the electrical contracting industry as it relates to safety and productivity are significant. The Board resolves to combat chemical abuse in any form through the Electrical Industry Drug-Free Alliance program. The Board also agrees that to be effective, programs to eliminate substance impairment should contain a strong rehabilitation component. The parties recognize the employer's right to adopt and implement a drug and alcohol policy subject to all applicable laws and regulations, procedural safeguards, scientific principles and legitimate interests of privacy and confidentiality. The Electrical Joint Arbitration Board reserves the right to change or modify any section of the drug testing policy and procedures. The Board also recognizes that funding for this program will be borne by the employers and that this funding has been established at $.01 per hour for all work covered by this agreement. When drug and alcohol testing is performed, all testing shall be conducted in accordance with the procedures outlined in the Electrical Industry Drug-Free Alliance policy. The Electrical Industry Drug-Free Alliance contribution shall be made pursuant to the provisions of Appendix "H".

**Section 16.06** The Payroll Report for Participating Employers and a single check payable to Electrical Insurance Trustees covering the Company's contribution for fringe benefits of employees shall be sent monthly to the address as stated in Article XVIII, Section 18.01 (a) of this Agreement.

**Communication Agreement**

**Section 16.07**    The Electrical Insurance Trustees are authorized and empowered to make the required allocation of the amount received among the various trusts.

**Section 16.08**    The failure of the Company to comply with the above provisions shall constitute a breach of this Agreement.

**Section 16.09**    It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF, the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the Employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

**Section 16.10**    An individual Employer who fails to remit as provided above shall be additionally subject to having this Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

**Section 16.11**    The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of his labor Agreement.

**Section 16.12**    If an Employer employs an Employee who is related to one of the owners of the Employer as a child, parent, sibling, in-law or spouse of either such owner or the owner's spouse, the Employer shall make fringe benefit contributions on behalf of such Employee on a full-time basis of not less than 40 hours per week for 48 weeks per calendar year; unless the Employer can demonstrate to the satisfaction of the Trustees that the Employee actually worked fewer hours, in which case the Trustees may determine that additional contributions need not be paid on behalf of that relative beyond the hours they determined were actually worked.

The Electrical Insurance Trustees are also authorized to require such full-time contributions by the Employer on behalf of an Employee who exercises significant control over the management and/or operation of the Employer's business, unless the Employer can demonstrate to the satisfaction of the Trustees that the Employee does not exercise such control.

This Section 16.12 shall not be deemed to require additional contributions on behalf of a relative who, in the absence of such contributions, does not qualify for any welfare benefits under a plan of benefits maintained by the Trustees.

**Communication Agreement**

**Section 16.13**    Employees on payroll reports submitted to the Electrical Insurance Trustees must be employed by the Participating Employer and signatory to the Communication Agreement. Employers cannot contribute to the Trustees on behalf of leased Employees or Employees of a Professional Employer Organization.

**Section 16.14**    The Company agrees that if the Union removes the employees of the Company from any and all job sites because the Company was delinquent for two (2) months in wage or fringe benefit payments due under the terms of this Agreement, such action will not constitute a violation of this Agreement.

**ARTICLE XVII**
**Wage and Fringe Benefit Performance Bond**

**Section 17.01**    The Company shall furnish two bonds, each with corporate surety, one to guarantee the payment of wages with the Union as "obligee" and the other to guarantee the payment of fringe benefit contributions with the Electrical Insurance Trustees as "obligee". The wage bond shall be on a standard form provided by the Union (an example is included in Appendix "J" of this Agreement). The fringe benefit bond shall be on a standard form provided by the Electrical Insurance Trustees (an example is included in Appendix "K" of this Agreement). The Company and the surety licensed to transact business in Illinois, herein called the "Surety", are hereby bound unto the Electrical Insurance Trustees, as Obligee, in the penal sums of (1) Seven Thousand Five Hundred Dollars and 00/100 ($7,500) for each covered employee of the Company for all fringe benefit contributions to the Obligee and any liquidated damages assessed thereon and (2) Three Thousand and 00/100 ($3,000) for contributions to the National Electrical Benefit Fund (NEBF) and any liquidated damages assessed thereon. The wage bond shall provide for full payment of net wages to a maximum of four (4) weeks of wages. There shall be no deductible on either bond.

**Section 17.02**    The bond shall further provide that it may not be terminated without thirty (30) days prior written notice to the Union and the Company.

**ARTICLE XVIII**
**Wage and Fringe Benefit Checks – Delinquency Collection Policy**

**Section 18.01**    Employers who fail to have sufficient funds in the bank to cover checks issued to Employees for wages and checks issued to the Electrical Insurance Trustees for contributions will be penalized by the Electrical Joint Arbitration Board.

(a)    Due Date. An Employer's contribution and payroll report are due on the fifteenth day of the month ("Due Date") following the month in which work was performed. Payroll reports and contributions must be sent to one of the following addresses:

## Communication Agreement

**Via United States Postal Service:**

Electrical Insurance Trustees
75 Remittance Drive, Suite 1615
Chicago, IL 60675-1615

**Via Courier (everything except U.S.P.S.):**

The Northern Trust Company
350 North Orleans Street
Receipt & Dispatch
8th Floor
Chicago, IL 60654

Attention: Electrical Insurance Trustees
Suite 1615

(b) Delinquent Defined. If a contribution and payroll report are not received by the Due Date, they are delinquent. If the Due Date is a Saturday, Sunday or holiday, the contribution and payroll report must be received by the next business day. Contributions are not received until they are received at one of the above addresses. The postmark date on an envelope is not the receipt date. If only a part of the amount due is paid, the shortage is delinquent.

(c) Additional Charge for Delinquency. Failure to pay the contribution by the Due Date will result in liquidated damages of one percent (1%), multiplied by the total amount due for each day late, up to ten percent (10%).

(d) Past Due Date and Amount. If an Employer's delinquent payment is not received by the last day of the month ("Past Due Date") following the month in which work was performed, the Trustees will assess additional liquidated damages and interest as follows:

(1) Liquidated damages at the rate described in item (c) above, plus an additional five percent (5%) of the delinquent amount. If the delinquent payment is not received by the last day of the month following the Past Due Date, another five percent (5%) in liquidated damages will be assessed.

(2) Interest at the rate of one percent (1%) will be assessed for each month, or a part thereof, that a payment is late.

As soon as reasonably possible following the Past Due Date, the Trust office will notify the delinquent Employer that failure to pay the amount due will result in liability for additional liquidated damages, interest, attorneys' fees and costs, and jeopardizes coverage and eligibility for its Employees.

(e) Claim on Bond and notice to EJAB. If an Employer is delinquent in the amount of $25,000 or more, the Trust office will promptly file a claim on the Employer's Fringe Benefit Bond and send a notice to the Electrical Joint Arbitration Board. If an Employer's delinquent payment is not received by the last day of the month following the Past Due Date, regardless of the amount of the delinquency, the Trust office will send a notice to the Employer's surety and to the Electrical Joint Arbitration Board.

(f) Payment Required and Suspension of Coverage.

## Communication Agreement

(1) Hours for which an Employer is delinquent do not count in determining eligibility under the Insurance Trust.

(2) If an Employer remains delinquent fifteen (15) days after the Past Due Date, the Trust office will promptly send a notice to (a) the Employer for distribution to Employees, (b) affected Employees at their last address in the Insurance Trust records and (c) Local Union No. 134, which explains that coverage under the Insurance Trust will be suspended if the delinquent contributions are not paid by the last day of the month following the Past Due Date. If the Trust office has no address for an Employee, the notice to the Union and his Employer will substitute for notice to the Employee. The Employer must post the notice at the location for other Employee notices. Failure to pay the delinquent amount in full by the last day of the month following the Past Due Date will result in a suspension of coverage and eligibility under the Insurance Trust for claims incurred after the last day of the month following the Past Due Date, and the suspension will continue until eligibility and coverage are reinstated by the Trustees.

(3) It is the intent of the Parties that an Employee should not continue to work for an Employer who is delinquent in making contributions to the Electrical Insurance Trustees and that while an Employee remains employed by a delinquent Employer, to the extent permitted by law, the Employee will not receive health and welfare benefits. If they deem it prudent, the Trustees may defer suspension of coverage and eligibility as otherwise required by this Agreement while pursuing other means of curing the delinquency, including in the case of a bankrupt Employer an application to the bankruptcy court for any relief to which the Trustees may be entitled.

(4) Suspension of coverage does not relieve the Employer of its obligation to pay contributions.

(g) Referral to Legal Counsel. The Fund Administrator will refer any delinquency which remains unpaid 90 days after the Due Date and which is more than $5,000 to Fund Counsel for legal action. Notice of the referral will be provided to the Chicago and Cook County Chapter, N.E.C.A., the Local 134 Business Manager and affected Employees. If Fund Counsel files suit to collect the delinquency, the Employer is liable for the amount of the contributions, liquidated damages, interest, and all costs of recovery, including but not limited to attorneys' fees and court costs.

(h) Deposit. If an Employer fails to make the full monthly contribution by the Due Date three (3) times in any twelve (12) month period, the Trustees will require the Employer to post a cash deposit which is the lesser (a) of three (3) months of estimated contributions, based on the Employer's last twelve (12) payroll reports, or (b) the amount on the following schedule:

## Communication Agreement

| Number of Employees | Deposit Required |
| --- | --- |
| 1 - 5 | $10,000 |
| 6 - 10 | $20,000 |
| 11 - 20 | $40,000 |
| 21 - 50 | $100,000 |
| 51 - 75 | $150,000 |
| Over 75 | $150,000 |

plus an additional amount determined by this schedule for increments of Employees beyond Seventy-five (75).

The term of the deposit is for a period of one (1) year.

The deposit will only be used to guarantee contributions and related liquidated damages, interest and costs of collection, and shall be in addition to other security hereunder.

The term of the deposit will automatically renew if the Employer is again delinquent during the year the deposit is required to be maintained.

(i) The following will also be processed as delinquencies:

(1) Liquidated Damages. Assessments for liquidated damages must be paid by the last day of the month in which assessed. If assessed liquidated damages are not paid by the last day of the month in which assessed, they will be treated the same as delinquent contributions except that liquidated damages will not be assessed for the late payment of liquidated damages.

(2) If a check for contributions is dishonored for any reason, the contributions will be treated as unpaid. In addition to their remedies hereunder, the Trustees may pursue any other remedies they may have against the Employer or any other person under any applicable law.

(3) Any amounts assessed by the Trust office pursuant to any rule adopted by the Trustees, including but not limited to any assessment for failure to permit a payroll audit, will be treated the same as delinquent contributions, and must be paid by the end of the month in which assessed.

(j) Controversies and Disputes. In any controversy, claim, demand, suit at law or other proceeding between an Employer or any other person and the Trustees, the Trustees are entitled to rely upon any facts appearing in the records of the Trustees, certified by the Union or an

## Communication Agreement

Employer, any facts which are of public record, and any other evidence pertinent to the issue involved.

The Trustees have discretionary authority to determine all questions and controversies relating to the Trust, including the construction of any rules or regulations adopted by the Trustees. The decision of the Trustees is binding upon all persons dealing with the Trustees. If a determination of the Trustees is subject to review by a court or other authorized person or body, the decision by the Trustees must be sustained unless it is determined that the Trustees acted in an arbitrary and capricious manner.

(k) Payroll Audit. The Trustees are authorized to conduct payroll audits of Employers from time to time as the Trustees deem desirable. If an Employer fails to schedule an audit for a date within 30 days of the Trustees' notice of audit or if an Employer refuses to schedule an audit, the Trustees shall immediately assess the Employer $1,000. The Trustees shall assess the Employer an additional $2,000 if the audit is not scheduled by the end of the following month. Thereafter, the Trustees shall assess the employer $3,000 per month until the Employer complies. If an audit discloses an underpayment, liquidated damages of fifteen percent (15%), multiplied by the amount of the underpayment, will be assessed. If the underpayment and liquidated damages are not paid by the last day of the month following at least fifteen (15) days notice by the Trust office, the same rules above that apply to delinquent contributions will apply except that the total liquidated damages will not exceed twenty percent (20%) of the underpayment. If the audit discloses an underpayment of three percent (3%) or more of the total contributions due for the audit period, the cost of the audit (deemed to be $750) will be paid by the Employer. If Fund Counsel files suit to collect an underpayment or to enforce the Trustees' right to conduct an audit, the Employer will be liable for any attorneys' fees and costs incurred by the Trustees in addition to any underpayment, liquidated damages and interest.

**Section 18.02** The Union is authorized to reject any wage bond it deems substandard. The Electrical Insurance Trustees are authorized to reject any fringe benefit bond they deem substandard.

**Section 18.03** The failure of an Employer to comply with the above provisions is a breach of this Agreement.

## ARTICLE XIX
### Workers' Compensation – Unemployment Insurance

**Section 19.01** During the term of this Agreement, the Company agrees to maintain workers' compensation coverage, with a carrier approved by the Illinois Department of Insurance, or be self-insured under policies and rules of the Illinois Industrial Commission, for employees covered by this Agreement. The Company shall furnish the Union with a Certificate of Insurance, or equivalent certification if self-insured, with the appropriate thirty (30) day cancellation notice provision certifying the above coverage as well as other coverage required by this Agreement. Furthermore, the Company shall furnish the Union with its registration number as issued by the Illinois Department of Employment Security.

# C.W. Olson & Company, Inc.

**1701 Golf Rd, Tower Three, 7th Floor**
**Rolling Meadows, IL 60008**
**Phone 847- 427- 3531**
**Fax 312- 755- 9448**

August 15, 2007

Mr. Sean Madix
Electrical Insurance Trustees
221 N. LaSalle Street
Chicago, IL 60602

RE: Wages & Fringe Benefits Bonds
Bond Number: 03301/3420-C
Cancellation Effective: September 17, 2007
Local 134 Communications Bond

Gentlemen:

The surety company is exercising its option to cancel the bond for the following contractor effective September 17, 2007:

**New Horizons Communications, Inc.**
**929 W. Liberty**
**Wheaton, IL 60187**

Cancellation is at the request of the surety company, due to reported delinquencies.

We trust you will find this in order. Should you have any questions, please do not hesitate to call our office.

Very truly yours,

Matthew S. Meliker
C.W. Olson & Co.
847-427-3533

CERTIFIED NO: 7005-1820-0005-2291-7555

CC:   T. Foley – Local #134      J. Donahue - JATC
       B. Reske – Local #134      M. Nemshick - NECA
       C. Dunne - Local #134      M. Krantz – EIT
       K. Montes – Local #134

RECEIVED
AUG 1 6 2007
ELECTRICAL INSURANCE TRUSTEES